FILED

2011 NOV 29  PM 3:00

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

September 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>           v.<br><br>MARC PETER WILLEMS,<br>  aka "Adam,"<br>  aka "Ruby,"<br>MICHAEL EVRON,<br>  aka "Keysh,"<br>JONATHAN COLBECK,<br>  aka "Jay,"<br>  aka "djsfishin,"<br>RYAN RAWLS,<br>  aka "jootgatter,"<br>JONATHAN DUGAN,<br>  aka "mollyssecret,"<br>  aka "bigeyedfish34,"<br>  aka "dreamingtrees,"<br>BRIAN COLBECK,<br>  aka "brnytrbl,"<br>CHARLES BIGRAS,<br>  aka "phattater," and<br>GEORGE MATZEK,<br>  aka "mcmurphy813,"<br>  aka "gm8133,"<br>  aka "goldenhorsesshoe-<br>webdesign,"<br><br>          Defendants. | CR NO. **CR 11 01137**<br><br>**I N D I C T M E N T**<br><br>[21 U.S.C. § 846: Conspiracy to<br>Distribute Controlled Substances;<br>18 U.S.C. § 1956(h): Conspiracy<br>to Launder Money; 21 U.S.C.<br>§§ 841(a)(1), (b)(1)(A)(v),<br>(b)(1)(B)(v), (b)(1)(C):<br>Distribution of LSD; 18 U.S.C.<br>§ 2: Aiding and Abetting; 21<br>U.S.C. § 848: Continuing Criminal<br>Enterprise; 21 U.S.C. § 853(a):<br>Criminal Forfeiture] |

The Grand Jury charges:

<u>GENERAL ALLEGATIONS</u>

1.    The Internet is a collection of computers and computer networks that are connected to one another via high-speed data links and telephone lines for the purpose of communicating and sharing data and information.  Connections between Internet computers exist across state and international borders; therefore, information sent between two computers connected to the Internet frequently crosses state and international borders even where the two computers are located in the same state.

2.    E-mail, also known as "electronic mail," is a popular means of transmitting messages and/or files in an electronic environment between computer users.  When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's e-mail server, and then transmitted to its final destination.  A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

3.    Many individuals and businesses obtain access to the Internet through businesses known as Internet Service Providers ("ISPs").  ISPs provide their customers with access to the Internet using telephone or other telecommunications lines; provide Internet e-mail accounts that allow users to communicate with other Internet users by sending and receiving electronic messages through the ISP's servers; remotely store electronic files on their customers' behalf; and may provide other services unique to each particular ISP.  ISPs maintain records pertaining

1  to the individuals or businesses that have subscriber accounts

2  with them.  Those records often include identifying and billing

3  information, account access information in the form of log files,

4  e-mail transaction information, posting information, account

5  application information, and other information both in computer

6  data and written record format.

7       4.   An Internet Protocol address (or simply "IP" address)

8  is a unique numeric address assigned to computers using the

9  Internet.  An IP address looks like a series of numbers, each in

10  the range of 0-255, separated by periods (e.g., 121.56.97.178).

11  Every computer using the Internet must be assigned an IP address

12  so that Internet traffic sent from and directed to that computer

13  may be properly directed from its source to its destination.

14  Most ISPs control a range of IP addresses to be assigned to their

15  customers' computers.

16       5.   At all relevant times, defendants MARC PETER WILLEMS,

17  also known as ("aka") "Adam," aka "Ruby" ("WILLEMS"); MICHAEL

18  EVRON, aka "Keysh" ("EVRON"); JONATHAN COLBECK, aka "Jay," aka

19  "djsfishin" ("JONATHAN COLBECK"); RYAN RAWLS, aka "jootgatter"

20  ("RAWLS"); JONATHAN DUGAN, aka "mollyssecret," aka

21  "bigeyedfish34," aka "dreamingtrees" ("DUGAN"); BRIAN COLBECK,

22  aka "brnytrbl" ("BRIAN COLBECK"); CHARLES BIGRAS, aka "phattater"

23  ("BIGRAS"); and GEORGE MATZEK, aka "mcmurphy813," aka "gm8133,"

24  aka "goldenhorsesshoewebdesign" ("MATZEK") were members of a

25  conspiracy to distribute a variety of controlled substances

26  world-wide through the use of on-line marketplaces that allowed

27  independent sources of supply to anonymously advertise illegal

28  drugs for sale to the public.  The operators of the on-line

marketplaces provided a controlled substances storefront, order
forms, on-line forums, customer service, and payment methods for
the different sources of supply.  For customers, the operators
screened all sources of supply and guaranteed delivery of the
illegal drugs.  The on-line marketplaces handled all
communications between the sources of supply and customers.  For
these services, the operators charged a commission based upon the
value of the order.  Customers of the on-line marketplaces have
been identified in every one of the states of the United States
and the District of Columbia and in approximately 34 other
countries.  There are thousands of registered users of the on-
line marketplaces.  The on-line marketplaces have multiple
sources of supply offering various controlled substances,
including lysergic acid diethylamide ("LSD"), 3,4-
methylenedioxymethampetamine ("MDMA"), fentanyl, mescaline,
ketamine, dimethyltryptamine ("DMT"), and high-end marijuana.

6.    Through approximately 2009, one on-line marketplace,
which went by the name Adamflowers, operated primarily via the e-
mail address "Adamflowers@Hushmail.com."  The operators initially
used Hushmail for all communications and orders.  Hushmail is a
web-based service, operating out of Canada, that offers encrypted
electronic mail and instant messaging.

7.    In approximately January 2010, to improve anonymity,
the operators moved their on-line controlled substances
marketplace to the TOR network.  TOR is a circuit of encrypted
connections through relays on the TOR network.  TOR can be
downloaded for free to any computer.  TOR allows websites and
electronic mail communications to completely mask IP address

4

information by spreading communications over a series of computers, or relays, located throughout the world.  On the TOR network, the on-line controlled substances marketplace was called "The Farmer's Market."  The majority of communications between the operators, sources of supply, and customers occurred on The Farmer's Market website via internal private messaging.

8.   The on-line marketplaces have accepted Western Union, Pecunix, PayPal, I-Golder, and cash as payment for illegal drug sales.  Customers who paid in cash for their orders sent the cash to addresses controlled by a co-conspirator.  The co-conspirator then collected the cash and forwarded the cash, minus a commission, to the operators via Western Union or other means. The organization referred to the addresses used to accept these cash payments or individuals who accepted these cash payments as "cash drops."

COUNT ONE

[21 U.S.C. § 846]

1.   Paragraphs One through Eight of the General Allegations are realleged and incorporated by reference as if fully set forth herein.

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing to on or about November 29, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants WILLEMS, EVRON, JONATHAN COLBECK, RAWLS, DUGAN, BRIAN COLBECK, BIGRAS, and MATZEK, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally:

1.   distribute at least 10 grams of a mixture and substance containing a detectable amount of LSD, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(v);

2.   distribute a mixture and substance containing a detectable amount of MDMA, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C);

3.   distribute a mixture and substance containing a detectable amount of fentanyl, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); and

4.   distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1.   Defendant WILLEMS, with the assistance of defendants EVRON, JONATHAN COLBECK, RAWLS, DUGAN, BRIAN COLBECK, BIGRAS, and MATZEK, and others known and unknown to the Grand Jury, would create, organize, manage, and oversee an on-line marketplace ("Adamflowers," and subsequently "The Farmer's Market," collectively referred to as the "on-line controlled substances marketplaces") for the distribution of controlled substances throughout the United States and other countries around the world.

2.   Defendant EVRON would oversee and provide technical and customer support for the on-line controlled substances marketplaces engaged in the distribution of various controlled substances throughout the United States and other countries around the world.

3.   Defendant JONATHAN COLBECK would obtain marijuana from defendants WILLEMS and EVRON which he, in turn, would supply to customers of the Adamflowers on-line controlled substances marketplace.

4.   Defendant RAWLS would supply LSD, ketamine, mescaline, DMT, and other controlled substances to customers of the Adamflowers on-line controlled substances marketplace.

5.   Defendant DUGAN would supply LSD, MDMA, and other controlled substances to defendant WILLEMS and customers of the Adamflowers on-line controlled substances marketplace.

7

6. Defendant WILLEMS would instruct customers wishing to purchase controlled substances from the on-line controlled substances marketplaces to send their payments in the names of various individuals in Budapest, Hungary, via Western Union, to bank accounts held by Sovereign Management and Legal, S.A., based in Panama, for transfer to a pre-paid debit card account accessible by defendant WILLEMS.

7. Defendants WILLEMS and EVRON would oversee the collection of customer payments for controlled substances purchased from the on-line controlled substances marketplaces and the remittance of payments to suppliers of the controlled substances sold from the on-line controlled substances marketplaces.

8. Between December 2008 and December 2009, defendant WILLEMS would pay himself, defendant EVRON, and suppliers of controlled substances sold from the on-line controlled substances marketplaces a total of at least approximately $118,575 and 49,511 euros using Pecunix.

9. Defendants WILLEMS and EVRON would recruit new sources of supply to supply controlled substances sold by the on-line controlled substances marketplaces.

10. Between January 2007 and October 2009, defendants WILLEMS and EVRON would process approximately 5,256 on-line orders for controlled substances valued at approximately $1,041,244 via the on-line controlled substances marketplaces.

11. Between May 2008 and May 2010, defendants WILLEMS and EVRON would receive approximately 608 Western Union orders as payments for shipments of controlled substances via the on-line

controlled substances marketplaces totaling approximately
$200,031.

    12.   Between January 2008 and August 2011, defendants
WILLEMS and EVRON would distribute, and aid and abet the
distribution of, at least 29,285 hits and 63 grams of LSD, via
the on-line controlled substances marketplaces.

    13.   Between March and September 2009, defendants WILLEMS
and EVRON would distribute, and aid and abet the distribution of,
at least 148 grams of MDMA powder, via the on-line controlled
substances marketplaces.

    14.   Between March 2008 and June 2010, defendants WILLEMS
and EVRON would distribute, and aid and abet the distribution of,
at least 1,489 ounces of marijuana through approximately 3,111
individual sales, via the on-line controlled substances
marketplaces.

    15.   During July 2009, defendants WILLEMS and EVRON would
distribute, and aid and abet the distribution of, at least 350
units of fentanyl, via the on-line controlled substances
marketplaces.

    16.   Defendant EVRON would order hashish from the
Adamflowers on-line controlled substances marketplace.

    17.   Defendant JONATHAN COLBECK would serve as a cash drop
for the on-line controlled substances marketplaces by accepting
payments for orders of controlled substances from customers and
forwarding the payments, less his commission, to defendant
WILLEMS and unindicted coconspirators who supplied controlled
substances distributed via the on-line controlled substances
marketplaces.

18.   Between November 2008 and May 2010, defendant JONATHAN COLBECK would mail from Iowa to defendant WILLEMS in the Netherlands approximately 134 separate envelopes containing a total of approximately $124,310, 11,125 euros, and 2,088 British pounds, which represented payments for prior orders of controlled substances made via the on-line controlled substances marketplaces.

19.   Between December 2008 and March 2010, defendant JONATHAN COLBECK would send defendant WILLEMS a total of approximately 36 Western Union orders totaling approximately $47,652 as payments for shipments of controlled substances distributed via the on-line controlled substances marketplaces.

20.   Between April 2011 and August 2011, defendant BRIAN COLBECK would receive approximately $261,029 in Paypal transfers from customers of The Farmer's Market for purchases of controlled substances, including $2,160 for the purchase of over 30 grams of LSD by an agent of the Drug Enforcement Administration ("DEA") acting in an undercover capacity (the "UC"), and would send approximately $54,000 from his Paypal account to defendant JONATHAN COLBECK and other unindicted co-conspirators.

21.   Between October 2010 and May 2011, defendant BRIAN COLBECK would wire transfer a total of approximately $60,034 in funds received from customers of The Farmer's Market from Michigan to foreign countries.

22.   Between July 2010 and March 2011, defendant BIGRAS would receive approximately $81,809 of Paypal transfers from customers of The Farmer's Market for purchases of controlled substances, and would send approximately $20,108 from his Paypal

1  account, which included payments to an unindicted co-
2  conspirator.

3      23.  Between June 2010 and December 2011, defendant BIGRAS
4  would wire transfer a total of approximately $76,398 in funds
5  received from customers of The Farmer's Market from Palm Bay,
6  Florida, to foreign countries.

7      24.  Between October 2010 and July 2011, defendant MATZEK
8  would receive approximately $186,221 of Paypal transfers from
9  customers of The Farmer's Market for purchases of controlled
10 substances and would send approximately $14,560 from his Paypal
11 account, which included payments to defendant BRIAN COLBECK and
12 other unindicted co-conspirators.

13     25.  Between September 2010 and June 2011, defendant MATZEK
14 would wire transfer a total of approximately $119,721 in funds
15 received from customers of The Farmer's Market from Secaucus, New
16 Jersey, and Florida to foreign countries.

17 C.  OVERT ACTS

18     In furtherance of the conspiracy and to accomplish the
19 objects of the conspiracy, on or about the following dates,
20 defendants WILLEMS, EVRON, JONATHAN COLBECK, RAWLS, DUGAN, BRIAN
21 COLBECK, BIGRAS, and MATZEK, and others known and unknown to the
22 Grand Jury, committed various overt acts within the Central
23 District of California, and elsewhere, including but not limited
24 to the following:

25     1.  On March 7, 2006, using coded language in an e-mail
26 communication, defendant EVRON advised defendant WILLEMS of the
27 IP address for their on-line controlled substances marketplace

28

and instructed defendant WILLEMS how to input the necessary passwords to use the website.

2.   On July 13, 2006, using coded language in an e-mail communication, defendant EVRON told defendant WILLEMS that their on-line controlled substances marketplace should be operational by the end of the following week if defendant WILLEMS was able to successfully install and configure an e-mail program for Hushmail.

3.   On October 2, 2006, using coded language in an e-mail communication, defendant EVRON directed defendant WILLEMS to refer to him as "Keysh" in all written communications.

4.   On January 12, 2007, using coded language in an e-mail communication, defendant EVRON told defendant WILLEMS that their controlled substances sales were much better that week and they would be rich soon if sales continued to grow at the same level.

5.   On March 1, 2007, using coded language in an e-mail communication, defendant EVRON informed unidentified controlled substances suppliers how to package their controlled substances and instructed them how controlled substances orders would appear, be processed, and get tracked on the on-line marketplace.

6.   On April 30, 2007, using coded language in an e-mail communication, defendant EVRON told defendant WILLEMS that he believed Pecunix and Virtualgold were the best means of accepting payment for controlled substances because they did not verify identification information.

7.   On June 27, 2007, defendant JONATHAN COLBECK wired $1,200 to R.P. in Lelystad, Netherlands, via Western Union.

8.   On July 30, 2007, defendant JONATHAN COLBECK wired $1,000 to defendant WILLEMS in Lelystad, Netherlands, via Western Union.

9.   On August 12, 2007, using coded language in an electronic communication, defendant WILLEMS told an unidentified individual that he had written a computer program that generated between 3,000 and 20,000 euros per month, which he received through bank wires, Western Union transfers, e-gold, Pecunix, and cash, and that he was looking for ways to avoid paying taxes on these funds without drawing the attention of European or other governments.

10.   On August 19, 2007, using coded language in an e-mail communication, defendant WILLEMS directed an unindicted co-conspirator to send payment for a controlled substances order via Western Union to his wife in Rio de Janeiro, Brazil.

11.   On September 11, 2007, using coded language in an e-mail communication, defendant WILLEMS directed an unindicted co-conspirator to send payment for an order of 100 hits of LSD and four units of marijuana via Western Union to him in the Netherlands.

12.   On October 8, 2007, using coded language in an e-mail communication, defendant EVRON advised defendant WILLEMS that he believed Hushmail was an encrypted and safe method of communication and that Hushmail would not produce e-mails to law enforcement officers.

13.   On October 15, 2007, using coded language in an e-mail communication, defendant WILLEMS directed an unindicted co-conspirator to send $1,200 via Western Union as payment for an

order of hashish and LSD to him in the Netherlands instead of to Panama.

14.  On November 5, 2007, defendant JONATHAN COLBECK wired $950 to defendant WILLEMS' wife in Rio de Janeiro, Brazil, via Western Union.

15.  On November 16, 2007, using coded language in an e-mail communication, defendant EVRON offered to assist a potential controlled substances source of supply with configuring and operating the computer software and hardware necessary to use the on-line controlled substances marketplace.

16.  On February 25, 2008, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator in Panama that she should have received a total of $19,834 since January 1, 2008, via Western Union, for loading onto a pre-paid debit card, bearing account number ####-####-####-3101, in the name R.G.P.

17.  On August 27, 2008, defendant JONATHAN COLBECK wired $1,000 to defendant WILLEMS' wife in Rio de Janeiro, Brazil, via Western Union.

18.  On September 10, 2008, using coded language in a series of e-mail communications, defendant WILLEMS asked whether an unindicted co-conspirator could make payment for a recent controlled substances shipment to an address in Singapore, and the unindicted co-conspirator told defendant WILLEMS that he had sent $1,230 as payment for four ounces of marijuana to him in the Netherlands via Western Union.

14

19.  On September 23, 2008, defendant JONATHAN COLBECK wired $1,700 to defendant WILLEMS' wife in Rio de Janeiro, Brazil, via Western Union.

20.  On October 13, 2008, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator in Panama that she should have received a total of $1,816 via Western Union from individuals in Wisconsin, Illinois, Texas, and the United Kingdom; and defendant WILLEMS asked the unindicted co-conspirator to load the funds onto a pre-paid debit card, bearing account number ####-####-####-3101, in the name R.G.P. as soon as possible.

21.  On November 5, 2008, using coded language in an e-mail communication, defendant EVRON advised defendant WILLEMS that he had a friend who was interested in selling as much LSD and MDMA as they could supply and asked defendant WILLEMS for bulk pricing on LSD and MDMA.

22.  On November 6, 2008, using coded language in an e-mail communication, defendant EVRON told defendant WILLEMS to send a one-ounce order of hashish to his mailbox in Costa Rica.

23.  On November 19, 2008, using coded language in an e-mail communication, defendant EVRON told defendant WILLEMS that he would take over controlled substances order processing and customer support for a larger percentage of their profits, which he hoped would increase their controlled substances sales and profits.

24.  On November 27, 2008, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator that he would advise the unindicted co-conspirator if

the marijuana, marijuana edibles, and hashish the unindicted co-conspirator supplied was of sufficient quality when he received the shipment.

25. On November 29, 2008, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator to send cash payments in the United States to defendant JONATHAN COLBECK's address in Cedar Rapids, Iowa, and to send cash payments in Europe to defendant WILLEMS' address in Lelystad, Netherlands.

26. On December 13, 2008, using coded language in a series of e-mail communications, defendant WILLEMS told an unindicted co-conspirator that he would start shipping controlled substances to the unindicted co-conspirator the following day and directed the unindicted co-conspirator to send payment to defendant WILLEMS' name, not the name "jozef."

27. On January 8, 2009, using coded language in an e-mail communication, defendant WILLEMS offered to provide defendant JONATHAN COLBECK with 25% of the gross sales conducted through defendant JONATHAN COLBECK's menus on their on-line controlled substances marketplace.

28. On January 16, 2009, using coded language in a series of e-mail communications, defendant WILLEMS told an unindicted co-conspirator that the prices had dropped for LSD and that he would have the unindicted co-conspirator's on-line controlled substances menu available for customers in the United States quickly if the unindicted co-conspirator was still interested in selling controlled substances in the United States.

29.   On February 3, 2009, defendant RAWLS wired $800 via Western Union to A.F. in Budapest, Hungary.

30.   On February 5, 2009, defendant BIGRAS wired $85 via Western Union from Palm Bay, Florida, to A.F. in Budapest, Hungary.

31.   On February 17, 2009, defendant BIGRAS wired $80 via Western Union from Palm Bay, Florida, to A.F. in Budapest, Hungary.

32.   On February 17, 2009, defendant RAWLS wired $1,100 via Western Union to A.F. in Budapest, Hungary.

33.   On February 26, 2009, defendant BIGRAS wired $100 via Western Union from Palm Bay, Florida, to A.F. in Budapest, Hungary.

34.   On March 9, 2009, defendant JONATHAN COLBECK wired $1,000 via Western Union to B.P. in Budapest, Hungary.

35.   On March 9, 2009, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator in Panama that she should have received $1,000 from a sender in Iowa and asked her to load the funds onto a pre-paid debit card, bearing account number ####-####-####-3101, in the name R.G.P.

36.   On March 19, 2009, defendants WILLEMS and EVRON agreed to ship 25 hits of LSD to the UC in Los Angeles, California, whom they believed was an LSD customer, in exchange for $180 to be sent via Western Union to A.F. in Budapest, Hungary.

37.   On March 25, 2009, defendant BIGRAS wired $116 via Western Union from Palm Bay, Florida, to A.F. in Budapest, Hungary.

38.  On March 26, 2009, defendant BIGRAS wired $100 via Western Union from Palm Bay, Florida, to A.F. in Budapest, Hungary.

39.  On March 28, 2009, defendant BIGRAS wired $125 via Western Union from Palm Bay, Florida, to A.F. in Budapest, Hungary.

40.  On March 29, 2009, using coded language in an e-mail communication, defendant DUGAN told an unidentified co-conspirator that he had 85% pure MDMA available that cost between $120 and $175 per gram in his area and that he was willing to exchange it for marijuana edibles.

41.  On March 31, 2009, using coded language in an e-mail communication, defendant DUGAN told defendant EVRON that he had wired $1,110 via Western Union as payment for three-quarters of a pound of marijuana and 25 hits of LSD.

42.  On April 2, 2009, using coded language in an e-mail communication, defendant BIGRAS told defendant WILLEMS that he had received an order for marijuana.

43.  On April 5, 2009, using coded language in an e-mail communication, defendant DUGAN advised an unidentified co-conspirator how to properly ingest his MDMA powder for the maximum effect and stated that he never diluted his MDMA.

44.  On April 8, 2009, using coded language in an e-mail communication, defendant EVRON told the UC that he should still wire payment for controlled substances to A.F. in Budapest, Hungary.

45.  On April 9, 2009, using coded language in an e-mail communication, defendant DUGAN told an unidentified co-

18

conspirator that he was selling LSD for $15 per hit and MDMA in half-gram quantities for $80 or gram quantities for $150.

46.  On April 10, 2009, defendants WILLEMS and EVRON agreed to ship 100 hits of LSD to the UC in Los Angeles, California, in exchange for $600 to be sent via Western Union to A.F. in Budapest, Hungary.

47.  On April 13, 2009, defendant BIGRAS wired $190 via Western Union from Palm Bay, Florida, to A.F. in Budapest, Hungary.

48.  On April 15, 2009, using coded language in an e-mail communication, defendant DUGAN told defendant EVRON that he wanted to order one-half pound of marijuana, one sheet of LSD, and eight units of psilocybin mushrooms.

49.  On April 16, 2009, defendant DUGAN wired $1,930 via Western Union to A.F. in Budapest, Hungary, as payment for six ounces of marijuana, 100 hits of LSD, and two units of psilocybin mushrooms.

50.  On April 17, 2009, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendant EVRON that one of the cash orders had been miscounted and failed to include $100.

51.  On April 28, 2009, using coded language in an e-mail communication, defendant DUGAN told defendant EVRON that he had plenty of MDMA available and would like to become a controlled substances vendor on the Adamflowers marketplace.

52.  On April 28, 2009, using coded language in an e-mail communication, defendant EVRON provided defendant DUGAN with the

details about how defendants EVRON and WILLEMS conducted business with controlled substances vendors.

53.  On April 29, 2009, using coded language in an e-mail communication, defendant DUGAN told defendant EVRON that he could obtain one kilogram of MDMA if defendant EVRON thought that amount would sell quickly.

54.  On April 29, 2009, using coded language in an e-mail communication, defendant DUGAN told defendant EVRON that he packaged and delivered his controlled substances carefully and wrapped the controlled substances in the same manner as defendants WILLEMS and EVRON.

55.  On April 29, 2009, using coded language in an e-mail communication, defendant WILLEMS told defendant EVRON that LSD was in stock and MDMA was available, and defendant WILLEMS asked defendant EVRON to send him $1,000 worth of Pecunix in order to pay for a computer server.

56.  On April 30, 2009, using coded language in an e-mail communication, defendant DUGAN told defendant EVRON that he was selling LSD quickly and asked defendant EVRON to send him an additional 280 hits of LSD the following day.

57.  On April 30, 2009, using coded language in an e-mail communication, defendant DUGAN told defendant EVRON that he would ship out a controlled substances order the next day and informed defendant EVRON that he had obtained 28 additional grams of MDMA.

58.  On May 1, 2009, using coded language in an e-mail communication, defendant EVRON informed customers and controlled substances suppliers about how to access and use their on-line controlled substances marketplace and instructed them to direct

any questions regarding controlled substances orders to
adamflowers@hush.ai.

59.   On May 1, 2009, using coded language in an e-mail
communication, defendant EVRON told the UC that they did not
accept cash as payment for LSD.

60.   On May 1, 2009, using coded language in an e-mail
communication, defendant WILLEMS told an unindicted co-
conspirator in Panama that she should have received $800 from a
sender in Iowa and asked her to load the funds onto a pre-paid
debit card, bearing account number ####-####-####-3101, in the
name R.G.P.

61.   On May 3, 2009, using coded language in an e-mail
communication, defendant DUGAN told defendant WILLEMS to send him
125 hits of LSD to an address on Garnet Street in North Babylon,
New York.

62.   On May 5, 2009, defendants WILLEMS and EVRON agreed to
ship 10.5 grams and 20 doses of MDMA to the UC in Los Angeles,
California, in exchange for $630 and $456, respectively, to be
sent via Western Union to A.F. and P.B. in Budapest, Hungary.

63.   On May 7, 2009, defendant BIGRAS wired $475 via Western
Union from Palm Bay, Florida, to A.F. in Budapest, Hungary.

64.   On May 8, 2009, using coded language in an e-mail
communication, defendant WILLEMS asked the UC to change the
receiver name on the Western Union payment for his recent order
of MDMA from P.B. to B.P. so defendant WILLEMS could collect the
funds.

65.   On May 8, 2009, using coded language in an e-mail
communication, defendant WILLEMS told an unindicted co-

conspirator in Panama that she should have received a total of $3,965 via Western Union from individuals in Georgia, Tennessee, North Carolina, Colorado, Texas, Arizona, and Long Beach, California; and defendant WILLEMS asked the unindicted co-conspirator to load the funds onto a pre-paid debit card, bearing account number ####-####-####-3101, in the name R.G.P.

66.  On May 8, 2009, using coded language in an e-mail communication, defendant WILLEMS told defendant EVRON that he earned $2,935 based upon $29,350 of controlled substances sales that week and that he had $1,935 transferred to his account, so he owed defendant EVRON $1,000.

67.  On May 8, 2009, using coded language in an e-mail communication, defendant DUGAN told the UC that he should receive two grams of MDMA within one week and offered to sell MDMA for $170 per gram.

68.  On May 10, 2009, defendant EVRON transferred 282 gold administration units via Pecunix from keysh@hush.ai into a business account in the name evronm@dtcinc.net.

69.  On May 11, 2009, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator in Panama that she should have received a total of $1,416 via Western Union from individuals in Minnesota, Texas, Virginia, Illinois, and Los Angeles, California; and defendant WILLEMS asked the unindicted co-conspirator to load the funds onto a pre-paid debit card, bearing account number ####-####-####-3101, in the name R.G.P.

70.  On May 11, 2009, using coded language in an e-mail communication, defendant DUGAN told defendant EVRON that his

22

controlled substances menu under the name "Dreaming Trees" was operational.

71. On May 13, 2009, using coded language in a series of e-mail communications, defendant WILLEMS asked an unindicted co-conspirator in Panama whether he could have dollars from controlled substances customers delivered to the bank in Budapest, Hungary, and have this money loaded onto a pre-paid debit card in future transactions, and the unindicted co-conspirator told defendant WILLEMS that they could accept $5,000 cash deposits in the Hungary account only once per month.

72. On May 14, 2009, using coded language in an e-mail communication, defendant DUGAN told an unidentified co-conspirator in Denver, Colorado, that he was an external vendor for Adamflowers and sold high-quality MDMA for $175 per gram shipped.

73. On May 14, 2009, using coded language in an e-mail communication, defendant EVRON advised the UC that the MDMA order the UC placed on May 5 should ship in the next few days.

74. On May 14, 2009, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator in Panama that his records showed that she should have received a total of $6,550 via Western Union from individuals in Iowa, North Carolina, Georgia, Connecticut, Florida, Kentucky, New York, Tennessee, Colorado, Texas, and Long Beach, California, and that he should have another $1,670 available for pick-up which was sent by individuals in Arizona, Minnesota, Texas, Virginia, Illinois, and Los Angeles, California.

75.   On May 14, 2009, defendant BIGRAS wired $195 via Western Union from Palm Bay, Florida, to A.F. in Budapest, Hungary.

76.   On May 16, 2009, using coded language in an e-mail communication, defendant WILLEMS apologized to the UC for the delay in filling the UC's May 5 MDMA order.

77.   On May 16, 2009, using coded language in an e-mail communication, defendant DUGAN advised his controlled substances customers that he had decided to start accepting Western Union as a method of paying for controlled substances.

78.   On May 17, 2009, using coded language in an e-mail communication, an unidentified co-conspirator in Tennessee told defendant DUGAN that he sent $400 via Western Union to defendant DUGAN in the name of N.S. in North Babylon, New York, for two grams of MDMA and other controlled substances.

79.   On May 18, 2009, using coded language in an e-mail communication, defendant DUGAN told an unidentified co-conspirator that he had received $350 as payment for two grams of MDMA.

80.   On May 20, 2009, using coded language in an e-mail communication, defendant DUGAN told an unidentified co-conspirator to send a controlled substances payment via Western Union to M.B. in Northport, New York.

81.   On May 20, 2009, using coded language in an e-mail communication, defendant DUGAN told the UC that he had received the UC's order for five grams of MDMA and advised the UC that he could make a payment via Western Union to M.B. in Northport, New York.

82.  On May 20, 2009, defendants WILLEMS and EVRON agreed to supply five grams of MDMA to the UC in Los Angeles, California, in exchange for $825 in cash to be sent by mail in the name of "John Dee" in North Babylon, New York.

83.  On May 26, 2009, defendant DUGAN agreed to supply H.S., who was then 19 years old, .5 grams of MDMA for shipment to Fort Collins, Colorado.

84.  On May 28, 2009, defendant BIGRAS wired $275 via Western Union from Palm Bay, Florida, to A.F. in Budapest, Hungary.

85.  On May 29, 2009, using coded language in an e-mail communication, an unidentified co-conspirator ordered from defendant DUGAN 25 hits of LSD for $250 and one gram of MDMA for shipment to Scottsdale, Arizona.

86.  On June 6, 2009, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendant WILLEMS that, by September, he would have two additional post office boxes to receive cash orders through the holidays.

87.  On June 10, 2009, using coded language in an e-mail communication, an unidentified co-conspirator told defendant DUGAN that he had sent defendant DUGAN $1,975 via Western Union for five sheets of LSD for shipment to Sugar Land, Texas.

88.  On June 10, 2009, using coded language in an e-mail communication, defendants WILLEMS and EVRON told the UC that, because they had received a large number of MDMA orders which had caused delays in their ability to fill orders, they would be willing to fill the UC's May 5, 2009 order for 10 grams of MDMA, send him a refund for the order, or offer the UC a credit in the

amount of his order towards the purchase of LSD, hashish, or marijuana.

89.  On June 11, 2009, defendants WILLEMS and EVRON received an e-mail communication containing coded language from the UC stating that the UC would like to take the credit from his May 5 MDMA order and buy LSD instead.

90.  On June 14, 2009, using coded language in an e-mail communication, defendant MATZEK provided defendant WILLEMS with his zip code in connection with his order for one and one-half grams of marijuana.

91.  On June 16, 2009, defendants WILLEMS and EVRON agreed to ship 100 hits of LSD to the UC in Los Angeles, California, in place of the MDMA the UC ordered on May 5, 2009.

92.  On June 16, 2009, using coded language in an e-mail communication, defendant BIGRAS told defendant WILLEMS that he had placed an order that day.

93.  On June 16, 2009, defendant BIGRAS wired $420 via Western Union from Palm Bay, Florida, to A.F. in Budakalasz, Hungary.

94.  On June 25, 2009, using coded language in an e-mail communication, defendant BIGRAS told defendant WILLEMS that he had received one-half ounce of marijuana that he had ordered but was still waiting to receive the other one-half ounce.

95.  On July 6, 2009, defendant BIGRAS wired $365 via Western Union from Palm Bay, Florida, to A.F. in Budakalasz, Hungary.

96. On July 10, 2009, defendants WILLEMS and EVRON agreed to supply A.S., who was then 19 years old, 25 hits of LSD for shipment to Oak Creek, Wisconsin.

97. On July 11, 2009, defendants WILLEMS and DUGAN agreed to supply J.R., who was then 18 years old, .5 grams of MDMA for shipment to Land O Lakes, Florida.

98. On July 12, 2009, using coded language in an e-mail communication, defendant DUGAN asked an unidentified co-conspirator whether he could send two separate Western Union transfers of $555 each that day as payment for a controlled substances shipment.

99. On July 13, 2009, defendant WILLEMS paid defendant EVRON 55.6154 gold administration units, which was the equivalent of $1,625, via Pecunix.

100. On July 16, 2009, defendant BIGRAS wired $385 via Western Union from Palm Bay, Florida, to A.F. in Budakalasz, Hungary.

101. On July 18, 2009, defendant WILLEMS paid defendant EVRON 36.4870 gold administration units, which was the equivalent of $1,100, via Pecunix.

102. On July 20, 2009, using coded language in an e-mail communication, defendant DUGAN agreed to sell the UC seven grams of MDMA for $1,050 because the UC was a good customer.

103. On July 20, 2009, using coded language in an e-mail communication, defendant DUGAN told the UC to send $1,050 in cash for seven grams of MDMA to Constantly Wired in North Babylon, New York.

104. On July 28, 2009, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendants WILLEMS and EVRON that he had received a total of $1,610 in cash for seven different controlled substances orders.

105. On July 29, 2009, using coded language in an e-mail communication, defendant DUGAN advised the UC that he had shipped seven grams of MDMA to the UC in Los Angeles, California.

106. On July 31, 2009, using coded language in an e-mail communication, defendant EVRON ordered an ounce of marijuana from the on-line controlled substances marketplace to be shipped to Buenos Aires, Argentina.

107. On August 1, 2009, using coded language in an e-mail communication, defendant WILLEMS advised defendant JONATHAN COLBECK that Adamflowers could start accepting cash payments for LSD in order to increase defendant JONATHAN COLBECK's income from serving as a cash drop.

108. On August 7, 2009, using coded language in an e-mail communication, defendant RAWLS asked defendant WILLEMS what the price for a quarter pound of high-quality marijuana would be if paid for via Western Union.

109. On August 8, 2009, defendants WILLEMS and EVRON agreed to supply S.K., who was then 20 years old, 10 hits of LSD for shipment to Cullowhee, North Carolina.

110. On August 10, 2009, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendant WILLEMS that he should not try to send 16 letters containing cash in an eight-day period in order to minimize the risk of getting caught by law enforcement and asked defendant WILLEMS to send controlled

28

substances to each of his post office boxes, but only cash to the post office boxes in Center Point and Vinton, Iowa.

111. On August 18, 2009, defendant BIGRAS wired $235 via Western Union from Palm Bay, Florida, to A.F. in Budakalasz, Hungary.

112. On August 21, 2009, defendant WILLEMS paid defendant EVRON 69.1743 gold administration units, which was the equivalent of 1,465 euros, via Pecunix.

113. On August 21, 2009, defendant WILLEMS paid an unindicted co-conspirator in Scotland, who was an LSD supplier, 38.7088 gold administration units, which was the equivalent of 820 euros, via Pecunix.

114. On August 24, 2009, defendant EVRON, via Pecunix, transferred 263.8409 gold administration units, which was the equivalent of $8,000, from keysh@hush.ai into a business account in the name evronm@dtcinc.net.

115. On August 24, 2009, defendants WILLEMS and EVRON agreed to ship two units of hashish oil to defendant JONATHAN COLBECK at his address on Virden Street in Urbana, Iowa.

116. On September 3, 2009, using coded language in an e-mail communication, defendant BRIAN COLBECK told defendant JONATHAN COLBECK that he had made a controlled substances payment of $427.65 via PayPal.

117. On September 4, 2009, defendant WILLEMS paid an unindicted co-conspirator in Scotland, who was an LSD supplier, 7.5508 gold administration units, which was the equivalent of 168 euros, via Pecunix.

118. On September 7, 2009, using coded language in an e-mail communication, defendant WILLEMS asked defendant JONATHAN COLBECK to send $1,000 to an unindicted controlled substances supplier at a post office box in North Babylon, New York, and to send the package with "tracking, but no signature required."

119. On September 9, 2009, using coded language in an e-mail communication, defendant BRIAN COLBECK told defendant JONATHAN COLBECK that he had just placed a controlled substances order and would make the payment via PayPal.

120. On September 9, 2009, using coded language in an e-mail communication, defendant BRIAN COLBECK told defendant JONATHAN COLBECK that he had made a controlled substances payment of $211.67 via PayPal.

121. On September 11, 2009, defendants WILLEMS and EVRON agreed to supply S.K., who was then 20 years old, 10 hits of LSD for shipment to Cullowhee, North Carolina.

122. On September 12, 2009, using coded language in an e-mail communication, defendant JONATHAN COLBECK asked an unindicted controlled substances supplier to mail him marijuana at his address on Virden Street in Urbana, Iowa.

123. On September 20, 2009, using coded language in an e-mail communication, defendant JONATHAN COLBECK advised defendant WILLEMS that he would send defendant WILLEMS a coded e-mail if he were to get apprehended by law enforcement officers.

124. On September 21, 2009, defendants WILLEMS and EVRON agreed to ship 500 hits of LSD to the UC in Los Angeles, California, in exchange for $2,500 to be sent via Western Union to A.F. in Budapest, Hungary.

125. On September 22, 2009, defendant BIGRAS wired $160 via Western Union from Palm Bay, Florida, to A.F. in Budakalasz, Hungary.

126. On September 23, 2009, defendant JONATHAN COLBECK wired $1,700 via Western Union to defendant WILLEMS' wife in Rio de Janeiro, Brazil.

127. On September 24, 2009, using coded language in an e-mail communication, defendant BRIAN COLBECK told defendant JONATHAN COLBECK that he had made a controlled substances payment of $151.95 via PayPal.

128. On September 25, 2009, defendants WILLEMS and EVRON agreed to ship one-half ounce of marijuana, one-eighth ounce of marijuana, and two vials of marijuana oil to the UC in Los Angeles, California, in exchange for $288, $189, and $120, respectively, all to be paid in cash and sent by mail to B.C. at a post office box in Center Point, Iowa.

129. On September 25, 2009, using coded language in an e-mail communication, defendant WILLEMS asked defendant JONATHAN COLBECK to send $450 to an unindicted controlled substances supplier at a post office box in Bristol, New Hampshire.

130. On September 26, 2009, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendants WILLEMS and EVRON that he had received a total of $1,580 in cash for 12 different controlled substances orders, including cash payments from the UC sent on September 21, 2009.

131. On September 28, 2009, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendant WILLEMS that, later that day, he would wire $1,950 via Western

1 | Union to defendant WILLEMS' wife in Rio de Janeiro, Brazil.

2 |     132. On September 28, 2009, defendant JONATHAN COLBECK wired

3 | $1,900 via Western Union to defendant WILLEMS' wife in Rio de

4 | Janeiro, Brazil.

5 |     133. On September 28, 2009, using coded language in an

6 | e-mail communication, defendant JONATHAN COLBECK confirmed to

7 | defendant WILLEMS that he had wire transferred $1,900 to

8 | defendant WILLEMS' wife in Rio de Janeiro, Brazil, and asked

9 | whether he should mail or wire transfer an additional $1,400 that

10 | arrived that day.

11 |     134. On October 6, 2009, defendants WILLEMS and EVRON agreed

12 | to supply B.L., who was then 19 years old, one ounce of marijuana

13 | for shipment to Vero Beach, Florida.

14 |     135. On October 10, 2009, using coded language in an e-mail

15 | communication, defendant WILLEMS asked defendant JONATHAN COLBECK

16 | to send $615 to an unindicted controlled substances supplier in

17 | Pennsylvania.

18 |     136. On October 27, 2009, using coded language in an e-mail

19 | communication, defendant BRIAN COLBECK told defendant JONATHAN

20 | COLBECK that he owed $742 for prior orders of marijuana.

21 |     137. On October 30, 2009, defendant JONATHAN COLBECK wired

22 | $2,000 via Western Union to defendant WILLEMS' wife in Rio de

23 | Janeiro, Brazil.

24 |     138. On October 30, 2009, using coded language in an e-mail

25 | communication, defendant JONATHAN COLBECK confirmed to defendant

26 | WILLEMS that he had wire transferred $2,000 to defendant WILLEMS'

27 | wife in Rio de Janeiro, Brazil.

28 |

139. On November 2, 2009, using coded language in an e-mail communication, defendant BIGRAS thanked defendant EVRON for posting information on an Adamflowers forum about defendant BIGRAS converting funds in PayPal to Pecunix for controlled substances customers.

140. On November 7, 2009, using coded language in an e-mail communication, defendant BRIAN COLBECK told defendant JONATHAN COLBECK that he had mailed $280 to a post office box in Atlanta, Georgia, and included a letter stating that the cash was for two one-half ounce orders of marijuana.

141. On November 9, 2009, defendant EVRON paid defendant WILLEMS 211.0969 gold administration units, which was the equivalent of 5,000 euros, via Pecunix.

142. On November 9, 2009, using coded language in a series of e-mail communications and pursuant to defendant WILLEMS' request, an unindicted co-conspirator in Panama provided instructions to defendant WILLEMS about how he could load approximately $10,000 onto defendant WILLEMS' pre-paid debit card by sending funds to Sovereign Management and Legal, S.A., by way of wire transfer to their bank in Budapest, Hungary.

143. On November 9, 2009, using coded language in an e-mail communication, defendant BRIAN COLBECK asked defendant JONATHAN COLBECK when his marijuana shipment would arrive and asked defendant JONATHAN COLBECK to send marijuana edibles to an address on Coldwater Island Drive in Coldwater, Michigan.

144. On November 10, 2009, using coded language in an e-mail communication, defendant EVRON told the operators of a private on-line club providing a website to its members for exchanging

33

electronic gold with each other that he and defendant WILLEMS wanted to use the club to conduct transactions involving the sale of marijuana, LSD, and other controlled substances.

145. On November 11, 2009, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendant BRIAN COLBECK that his order for marijuana edibles had been shipped to an address on Senator Street in Detroit, Michigan.

146. On November 14, 2009, using coded language in an e-mail communication, defendant EVRON told defendant WILLEMS that he had devised a solution to ensure that controlled substances suppliers were only paid for orders received by customers and that, when coupled with an invoicing scheme he had created, they should eliminate the loss of monies to external controlled substances suppliers and controlled substances customers.

147. On November 17, 2009, using coded language in an e-mail communication, defendant WILLEMS asked defendant JONATHAN COLBECK to send $1,150 to an unindicted controlled substances supplier in Pennsylvania.

148. On November 18, 2009, using coded language in an e-mail communication, defendant WILLEMS apologized to the UC for the delay in shipping the UC's September 21, 2009 LSD order, explained that they would resolve back orders of LSD soon, and informed the UC that they would have a new on-line controlled substances marketplace running in early 2010.

149. On November 20, 2009, using coded language in an e-mail communication, defendant WILLEMS asked defendant JONATHAN COLBECK to send $1,500 to an unindicted controlled substances supplier.

34

150. On November 20, 2009, defendant WILLEMS paid defendant EVRON 46.8274 gold administration units, which was the equivalent of 1,165 euros, via Pecunix.

151. On November 25, 2009, defendant JONATHAN COLBECK wired $2,190 via Western Union to defendant WILLEMS' wife in Rio de Janeiro, Brazil.

152. On November 25, 2009, using coded language in an e-mail communication, defendant JONATHAN COLBECK confirmed to defendant WILLEMS that he had wire transferred $2,190 to defendant WILLEMS' wife in Rio de Janeiro, Brazil.

153. On November 30, 2009, using coded language in an e-mail communication, defendant EVRON apologized to the UC for the delay in shipping the UC's September 21, 2009 LSD order and told the UC the order had shipped a few hours earlier.

154. On December 1, 2009, using coded language in an e-mail communication, defendant BRIAN COLBECK told defendant JONATHAN COLBECK that he had made a controlled substances payment of $101.24 via PayPal.

155. On December 1, 2009, using coded language in an e-mail communication, defendant EVRON received a confirmation of his order of one-half ounce of marijuana to be delivered to his address in Buenos Aires, Argentina.

156. On December 6, 2009, using coded language in an e-mail communication, defendant WILLEMS told defendant EVRON that he had discovered a problem with his existing on-line controlled substances marketplace which was causing him to lose a great deal of income and further told defendant EVRON that, within approximately two or three months, he intended to change the

1  manner in which the on-line controlled substances marketplace
2  operated.
3      157. On December 7, 2009, using coded language in an e-mail
4  communication, defendants WILLEMS and EVRON told the UC that all
5  controlled substances orders had been shipped, including back
6  orders, and instructed the UC not to use a mail service that
7  requires the recipient to sign for the package for controlled
8  substances payments because their European cash recipients would
9  not sign for any packages.
10     158. On December 8, 2009, using coded language in an e-mail
11 communication, defendant JONATHAN COLBECK confirmed to defendant
12 WILLEMS that he had wire transferred $2,500 to him and stated
13 that he still had $700 in cash in his possession, but had not
14 received any cash orders that day.
15     159. On December 10, 2009, using coded language in an e-mail
16 communication, defendant WILLEMS told defendant JONATHAN COLBECK
17 to ship a controlled substances order to a customer in New Jersey
18 and advised defendant JONATHAN COLBECK that his share of the sale
19 would be $219, which would be in his weekly payment.
20     160. On December 15, 2009, using coded language in an e-mail
21 communication, defendant EVRON told the UC they had to split the
22 UC's order for 500 hits of LSD into two orders and the remaining
23 200 hits they had yet to ship to the UC would be shipped the next
24 day or the day after.
25     161. On December 19, 2009, using coded language in an e-mail
26 communication, defendant JONATHAN COLBECK told defendant WILLEMS
27 that he would wire transfer $2,500 to defendant WILLEMS the
28

36

following day and asked defendant WILLEMS if he had any more high-quality marijuana.

162. On December 20, 2009, using coded language in an e-mail communication, defendant WILLEMS told defendant JONATHAN COLBECK that he could send defendant JONATHAN COLBECK large quantities of high-quality marijuana and instructed defendant JONATHAN COLBECK to send him money via Western Union, not the mail, while defendant WILLEMS was in Brazil with his wife.

163. On December 20, 2009, defendant JONATHAN COLBECK wired $2,500 via Western Union to defendant WILLEMS' wife in Rio de Janeiro, Brazil.

164. On December 21, 2009, using coded language in a series of e-mail communications, an unindicted co-conspirator in Panama told defendant WILLEMS that the current individual to whom customer payments via Western Union should be sent was J.C.S. in Budapest, Hungary.

165. On December 21, 2009, using coded language in an e-mail communication, defendant WILLEMS told defendant JONATHAN COLBECK that defendants WILLEMS and EVRON would no longer use him to accept and forward cash for controlled substances orders because defendants WILLEMS and EVRON believed their Western Union recipient had been identified by law enforcement, and defendant WILLEMS offered defendant JONATHAN COLBECK the opportunity to become a large-scale external controlled substances vendor on their on-line marketplace.

166. On December 21, 2009, using coded language in an e-mail communication, defendant BIGRAS told defendant WILLEMS that he had converted $3,000 in funds in PayPal to Pecunix for controlled

substances customers and asked defendant WILLEMS to let him know if they were planning to stop discounting controlled substances orders paid via Pecunix because doing so would cut into defendant BIGRAS' profits.

167. On December 21, 2009, using coded language in an e-mail communication, defendant BIGRAS told defendant EVRON that he had lost $300 in one transaction in which he converted funds in PayPal to Pecunix for controlled substances customers and stated that he believed he was providing a valuable service to their community of on-line controlled substances dealers and purchasers.

168. On December 21, 2009, using coded language in an e-mail communication, defendant EVRON suggested to defendant WILLEMS that defendant BIGRAS could become a PayPal receiver for their on-line controlled substances marketplace.

169. On December 22, 2009, using coded language in an e-mail communication, defendant WILLEMS told defendant JONATHAN COLBECK that he was concerned about the amount of risk defendant JONATHAN COLBECK was taking by both collecting and remitting controlled substances proceeds to defendant WILLEMS and distributing controlled substances for defendant WILLEMS.

170. On December 24, 2009, using coded language in an e-mail communication, defendant BIGRAS told defendant EVRON that he could accept PayPal payments from controlled substances customers, charge a small commission, and then fund the remaining amount to Pecunix for transfer to defendant WILLEMS.

171. On December 24, 2009, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendant WILLEMS

and his wife that he had enjoyed serving them by acting as a cash drop for controlled substances customers and reselling controlled substances.

172. On December 26, 2009, using coded language in an e-mail communication, defendant EVRON ordered one-half ounce of marijuana from the on-line controlled substances marketplace to be shipped to Buenos Aires, Argentina.

173. On December 27, 2009, using coded language in an e-mail communication, defendant BIGRAS told defendant EVRON that he had concerns about accepting cash or Western Union transfers from controlled substances customers because it could draw attention to their activities and might result in lost cash, and therefore he would prefer to accept PayPal payments and pay defendant WILLEMS via Pecunix.

174. On December 28, 2009, using coded language in an e-mail communication, defendant JONATHAN COLBECK told an unindicted controlled substances supplier that he had several ounces of marijuana resin in stock and estimated that he could generate between $2,000 and $5,000 in income from the sale of the marijuana.

175. On December 29, 2009, using coded language in an e-mail communication, defendant EVRON told defendant BIGRAS that he and defendant WILLEMS wanted to receive the amount of money a controlled substances customer paid for their order and defendant BIGRAS could add whatever surcharge he wanted for the service of accepting funds via PayPal.

176. On December 29, 2009, using coded language in a series of e-mail communications, defendant BRIAN COLBECK told defendant

39

1   JONATHAN COLBECK that he needed a total of three-quarters of an
2   ounce of marijuana and that he would be sending defendant
3   JONATHAN COLBECK a controlled substances payment soon.

4       177. On December 31, 2009, using coded language in an e-mail
5   communication, defendant JONATHAN COLBECK told defendant WILLEMS
6   that he had wire transferred $1,800 to defendant WILLEMS and had
7   not received any cash in the mail that day.

8       178. On January 4, 2010, using coded language in an e-mail
9   communication, defendant WILLEMS informed customers and
10  controlled substances sources of supply using his on-line
11  controlled substances marketplace that the marketplace had gross
12  sales in excess of $500,000 during 2009; and defendant WILLEMS
13  advised the customers and suppliers that defendant EVRON had
14  developed a new way to operate the on-line marketplace featuring
15  improved security, better inventory management, current
16  controlled substances menus, and consolidated payment methods
17  even if customers ordered from multiple vendors, all of which
18  would replace their current system in the near future.

19      179. On January 4, 2010, using coded language in an e-mail
20  communication, defendant EVRON told the UC that, if the remaining
21  100 hits of LSD from the UC's September 21, 2009 order did not
22  arrive by the end of the week, the UC should send defendant EVRON
23  the order number and he would get the remaining LSD sent out.

24      180. On January 5, 2010, using coded language in an e-mail
25  communication, defendant EVRON received a confirmation of his
26  order of one-half ounce of marijuana to be delivered to his
27  address in Buenos Aires, Argentina.

28

181. On January 5, 2010, using coded language in an e-mail communication, defendants WILLEMS and EVRON told customers of Adamflowers that they were ready to transition to the TOR network and provided customers with the TOR address of The Farmer's Market.

182. On January 8, 2010, using coded language in an e-mail communication, defendant EVRON told defendant WILLEMS why he did not believe they should modify the pricing system for their on-line controlled substances marketplace.

183. On January 10, 2010, using coded language in an e-mail communication, defendant EVRON gave defendant BIGRAS instructions on how to accept PayPal payments.

184. On January 13, 2010, using coded language in an e-mail communication, defendant BIGRAS told defendant JONATHAN COLBECK that he had funded defendant JONATHAN COLBECK's Pecunix account with $200.

185. On January 13, 2010, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator in Panama that she should have received a total of $1,631 via Western Union from individuals in Florida, Washington, DC, Indiana, Georgia, Canada, and the United Kingdom; and defendant WILLEMS asked the unindicted co-conspirator to load the funds onto a pre-paid debit card account, bearing number ####-####-####-3101, in the name R.G.P.

186. On January 14, 2010, using coded language in an e-mail communication, defendant WILLEMS informed customers and controlled substances sources of supply using his on-line controlled substances marketplace that he did not complete the

previous week's invoicing and was available for approximately two hours that day to resolve any problems they might have been experiencing.

187. On January 15, 2010, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendant EVRON that Adamflowers and The Farmer's Market had been using the address "B. Colbeck" at a post office box in Center Point, Iowa, as the United States cash drop.

188. On January 16, 2010, using coded language in an e-mail communication, defendant WILLEMS told the UC that several controlled substances orders from early December 2009 were still pending and, because defendant WILLEMS was re-stocking his controlled substances supplies, the UC should contact defendant WILLEMS in one or two weeks concerning the remaining 100 hits of LSD outstanding from the UC's September 21, 2009 order.

189. On January 20, 2010, using coded language in an e-mail communication, defendant BRIAN COLBECK told defendant JONATHAN COLBECK that he had made a controlled substances payment of $312.17 via PayPal.

190. On January 26, 2010, using coded language in a series of e-mail communications, an unindicted co-conspirator in Panama told defendant WILLEMS that starting February 1, 2010, the individual to whom customer payments via Western Union should be sent was B.P. in Budapest, Hungary.

191. On January 27, 2010, using coded language in an e-mail communication, defendant WILLEMS advised defendant JONATHAN COLBECK to send him $2,500 via Western Union as soon as possible

and reiterated that he wanted to pay defendant JONATHAN COLBECK a seven percent commission.

192. On January 28, 2010, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendant WILLEMS that he had wire transferred $2,500 to defendant WILLEMS.

193. On January 29, 2010, defendant JONATHAN COLBECK received four pieces of mail sent from the Netherlands addressed to "BJC and Associates" at a post office box in Vinton, Iowa.

194. On January 29, 2010, defendant JONATHAN COLBECK received five pieces of mail sent from the Netherlands addressed to B.C. at a post office box in Center Point, Iowa.

195. On February 1, 2010, using coded language in an e-mail communication, defendant MATZEK told defendant WILLEMS that he had sent $60 to him via Western Union and that all the information on the Western Union transfer was false except for the name and transfer number.

196. On February 2, 2010, defendants WILLEMS and EVRON agreed to ship one-half ounce of marijuana to defendant JONATHAN COLBECK at his address on Virden Street in Urbana, Iowa.

197. On February 2, 2010, using coded language in an e-mail communication, defendant WILLEMS told defendant RAWLS that defendant RAWLS' order for three ounces of marijuana had been shipped to an address on Deer Trail in Alpharetta, Georgia.

198. On February 3, 2010, defendant EVRON, via Pecunix, transferred 195.3636 gold administration units, which was the equivalent of 5,000 euros, from keysh@hush.ai into a business account in the name evronm@dtcinc.net.

199. On February 4, 2010, using coded language in an e-mail communication, defendant WILLEMS told defendant EVRON that they should send an e-mail to their customers advising the customers that their European money collector and Western Union receiver were apprehended by law enforcement in January 2010, which caused their on-line controlled substances marketplace to change the manner in which it handled the shipping of controlled substances and receipt of controlled substances payments.

200. On February 5, 2010, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator in Panama that she should have received a total of $1,411 via Western Union from individuals in Florida, Colorado, New Jersey, New York, and the United Kingdom; and defendant WILLEMS asked the unindicted co-conspirator to load the funds onto a pre-paid debit card, bearing account number ####-####-####-3101, in the name R.G.P.

201. On February 9, 2010, using coded language in an e-mail communication, defendant EVRON told defendant WILLEMS that he had repaired a few technical problems with the on-line controlled substances marketplace's invoicing codes, added a listing for all shipped orders, and updated information pertaining to Western Union transfers.

202. On February 13, 2010, defendant JONATHAN COLBECK received five pieces of mail sent from the Netherlands addressed to "BJC and Associates" at a post office box in Vinton, Iowa.

203. On February 13, 2010, using coded language in a series of e-mail communications, defendants EVRON and WILLEMS discussed their respective responsibilities in the on-line controlled

44

1   substances marketplace and what percentage of the profits they
2   each took.

3       204. On February 15, 2010, using coded language in an e-mail
4   communication, defendant WILLEMS told defendant EVRON that he
5   wanted to receive 10% of the gross sales regardless of the system
6   they used to distribute controlled substances, that he would be
7   available to assist in maintaining and growing their controlled
8   substances distribution business, and that defendant EVRON would
9   be responsible for handling the financial aspects of their
10  controlled substances distribution business.

11      205. On February 15, 2010, using coded language in an e-mail
12  communication, defendant EVRON told defendant WILLEMS that he was
13  going to change the passwords on the Pecunix, iGolder, and United
14  States cash accounts in order to enhance security in light of
15  their recent change in responsibilities concerning the on-line
16  controlled substances marketplace.

17      206. On February 16, 2010, using coded language in an e-mail
18  communication, defendant JONATHAN COLBECK directed a controlled
19  substances customer ordering marijuana to make a payment via
20  PayPal at defendant JONATHAN COLBECK's e-mail address and make a
21  cash payment to "BGC" at a post office box in Center Point, Iowa.

22      207. On February 16, 2010, using coded language in an e-mail
23  communication, defendant EVRON apologized to the UC for the delay
24  in shipping the remaining 100 hits of LSD they owed the UC from
25  his September 21, 2009 order and told the UC that defendant
26  WILLEMS was handling outstanding controlled substances orders.

27      208. On February 16, 2010, using coded language in an e-mail
28  communication, defendant WILLEMS apologized to the UC for the

45

delay in shipping the remaining 100 hits of LSD they owed the UC from his September 21, 2009 order, offered to send the UC the 100 hits of LSD at the price of the insurance normally offered for controlled substances orders, and directed the UC to send the money via Western Union to B.P. in Budapest, Hungary.

209. On February 16, 2010, using coded language in an e-mail communication, defendant WILLEMS told defendant JONATHAN COLBECK that he directed cash-paying controlled substances customers to mail cash payments to "GBC" at a post office box in Walker, Iowa.

210. On February 16, 2010, using coded language in an e-mail communication, defendant JONATHAN COLBECK informed defendant WILLEMS that he had collected 16 letters containing cash payments for controlled substances that day and he had $1,500 and 70 euros in his possession.

211. On February 18, 2010, using coded language in an on-line communication, defendant BIGRAS posted a message to a forum on The Farmer's Market providing instructions on how to make controlled substances payments via PayPal.

212. On February 21, 2010, using coded language in a series of e-mail communications, defendant JONATHAN COLBECK told defendant BRIAN COLBECK to start selling LSD for between $12 and $15 per hit in order to maximize defendant BRIAN COLBECK's investment and gave defendant BRIAN COLBECK pricing information for additional controlled substances.

213. On February 22, 2010, using coded language in a series of e-mail communications, defendant BRIAN COLBECK told defendant JONATHAN COLBECK that he would have a $300 payment for LSD for him in a few days.

214. On February 22, 2010, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator in Panama that she should have received a total of $799 via Western Union from individuals in North Carolina, Alabama, and Scotland; and defendant WILLEMS asked the unindicted coconspirator to load the funds onto a pre-paid debit card, bearing account number ####-####-####-3101, in the name R.G.P.

215. On February 22, 2010, using coded language in an e-mail communication, defendant EVRON told defendant WILLEMS that he had burned himself trying to assemble packages of controlled substances for shipping.

216. On February 24, 2010, defendant JONATHAN COLBECK wired $2,500 via Western Union to defendant WILLEMS' wife in Rio de Janeiro, Brazil.

217. On February 24, 2010, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendant WILLEMS that he had wire transferred $2,500 to defendant WILLEMS.

218. On February 28, 2010, defendant EVRON told defendant WILLEMS that he had instructed an unidentified individual to wire $1,500 to defendant WILLEMS' pre-paid debit card, and advised defendant WILLEMS that he had sent 250 euros to ruby_p@hushmail.com and had requested a $3,765 wire transfer to the bank account of Sovereign Management and Legal, S.A., in Budapest, Hungary.

219. On March 5, 2010, using coded language in an e-mail communication, defendant BRIAN COLBECK told defendant JONATHAN COLBECK that he was sending a $250 payment via PayPal that day.

220. On March 9, 2010, using coded language in a series of e-mail communications, an unindicted co-conspirator in Panama told defendant WILLEMS that starting on March 16, 2010, the individual to whom customer payments should be sent via Western Union was L.P. in Budapest, Hungary.

221. On March 10, 2010, defendant WILLEMS agreed to send an undercover agent of the Drug Enforcement Administration ("UC2") in Cedar Rapids, Iowa, 150 hits of LSD for delivery to Marion, Iowa, for $630 in cash, which was sent via the mail to defendant JONATHAN COLBECK in Center Point, Iowa.

222. On March 12, 2010, using coded language in an e-mail communication, defendant WILLEMS told defendant RAWLS that he would give defendant RAWLS exclusive LSD sales in the United States and Canada, he could easily send 5,000 to 10,000 hits of LSD per week to defendant RAWLS if defendant RAWLS had two different addresses to which he could send the LSD, and they could spread the sending of controlled substances payments out by using Western Union, PayPal, Pecunix, wire transfers, and cash.

223. On March 15, 2010, defendant JONATHAN COLBECK wired $2,250 via Western Union to defendant WILLEMS' wife in Rio de Janeiro, Brazil.

224. On March 15, 2010, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendant WILLEMS that he had wire transferred $2,250 to defendant WILLEMS.

225. On March 16, 2010, using coded language in an e-mail communication, defendant JONATHAN COLBECK presented defendant WILLEMS with the name of a new controlled substances source of

supply who wished to sell controlled substances on their on-line marketplace.

226. On March 16, 2010, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendant BRIAN COLBECK the user name and password to use in order to access The Farmer's Market.

227. On March 20, 2010, using coded language in an e-mail communication, defendant RAWLS told defendant WILLEMS that he had $20,000 available to invest in The Farmer's Market.

228. On March 22, 2010, using coded language in an e-mail communication, defendant WILLEMS advised defendant RAWLS that he would send him 8,000 LSD hits for his $20,000 investment in The Farmer's Market and stated that defendant EVRON could advise defendant RAWLS about how to handle the financial transaction.

229. On March 23, 2010, using coded language in an on-line communication, defendant RAWLS posted a message to a forum on The Farmer's Market stating that he would start selling LSD throughout the United States in a few weeks and anticipated having sufficient quantities available for sale to eliminate future back orders.

230. On March 24, 2010, using coded language in an e-mail communication, defendant EVRON received a confirmation of his order of marijuana seeds to be delivered to his address in Ciudad de Buenos Aires, Argentina.

231. On March 26, 2010, using coded language in an e-mail communication, defendant EVRON informed defendant WILLEMS of the amount of money they earned that week, advised defendant WILLEMS that he now owed defendant EVRON 11,849 euros, and stated that

defendant RAWLS would be wiring defendant WILLEMS $20,000 the upcoming week.

232. On March 26, 2010, using coded language in an e-mail communication, defendant MATZEK told defendant WILLEMS that he had received his order for one ounce of marijuana shipped to SUNY Fredonia, Hemingway Hall, Fredonia, New York.

233. On March 30, 2010, using coded language in an e-mail communication, defendant BIGRAS told defendant EVRON that, between February 24 and March 29, 2010, he had sent five wire transfers totaling 5,187 euros, which was the equivalent of $7,333, to Sovereign Management and Legal, S.A., in Panama City, Panama, via Bank of America

234. On April 4, 2010, using coded language in a series of e-mail communications, defendant JONATHAN COLBECK told defendant BRIAN COLBECK to mail three different LSD orders totaling 20 hits to addresses in Minnesota, Alabama, and New Jersey.

235. On April 5, 2010, using coded language in an e-mail communication, defendant WILLEMS told defendant EVRON that defendant RAWLS had wired 4,205.13 euros, which was the equivalent of $5,887.93, to defendant EVRON that day and intended to send one additional wire and one Pecunix transfer that week.

236. On April 7, 2010, defendant EVRON, via Pecunix, transferred 54.8418 gold administration units, which was the equivalent of $2,000, from keysh@hush.ai into a business account in the name evronm@dtcinc.net.

237. On April 8, 2010, using coded language in an e-mail communication, defendant EVRON advised an unidentified controlled substances customer that he operated The Farmer's Market and

asked the customer to let him know what controlled substances he may be interested in purchasing.

238. On April 12, 2010, using coded language in an e-mail communication, defendant WILLEMS told defendant EVRON that defendant RAWLS had wired 3,822.82 euros, which was the equivalent of $5,385.47.

239. On April 13, 2010, using coded language in an e-mail communication, defendant WILLEMS told defendants EVRON and RAWLS that he had received a transfer of 4,000 euros onto his pre-paid debit card and asked defendant RAWLS for an address to which to send defendant RAWLS' LSD.

240. On April 14, 2010, using coded language in an e-mail communication, defendant RAWLS told defendant WILLEMS to ship LSD to him at either Rebound Consulting on Highway 9 in Alpharette, Georgia, or Creative Concepts Inbound on Jordan Court in Alpharette, Georgia.

241. On April 18, 2010, using coded language in an e-mail communication, defendant BIGRAS told defendant JONATHAN COLBECK to mail marijuana resin to him at an address on Glencove Avenue Northwest in Palm Bay, Florida.

242. On April 20, 2010, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendant WILLEMS that he wanted to provide defendant BRIAN COLBECK with LSD and lower-quality marijuana to resell through his own on-line order menu.

243. On April 21, 2010, using coded language in an e-mail communication, defendant EVRON received a confirmation of his

51

order of marijuana seeds to be delivered to his address in Ciudad de Buenos Aires, Argentina.

244. On April 23, 2010, using coded language in a private message communication, defendant EVRON told the UC that he did not have access to orders placed on the Adamflowers marketplace and directed the UC to contact defendant WILLEMS about the 100 hits of LSD they owed the UC from his September 21, 2009 order.

245. On April 23, 2010, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator in Panama that she should have received a total of $1,696 via Western Union from individuals in Pennsylvania, Italy, Mexico, Romania, Australia, Sweden, Austria, Ireland, and the United Kingdom; and defendant WILLEMS asked the unindicted coconspirator to load the funds onto a pre-paid debit card, bearing account number ####-####-####-3101, in the name R.G.P.

246. On April 23, 2010, using coded language in a series of e-mail communications, defendant JONATHAN COLBECK told an unindicted co-conspirator that he had three different types of high-quality marijuana available for sale, informed the unindicted co-conspirator that he would send controlled substances via priority mail, and directed the unindicted co-conspirator to mail cash for his controlled substances order to "GBC" at a post office box in Walker, Iowa.

247. On April 25, 2010, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendant WILLEMS to instruct cash-paying controlled substances customers to send payments to "BJC and Associates" at a post office box in Vinton, Iowa.

248. On April 25, 2010, using coded language in an e-mail communication, defendant WILLEMS told defendant RAWLS that he had received the latest transfer of funds a few days earlier, which totaled 14,065 euros, and stated that one controlled substance sample was en-route to each of the two addresses defendant RAWLS had provided on April 15, 2010.

249. On April 26, 2010, using coded language in an e-mail communication, defendant WILLEMS told the UC that he knew many customers had lost trust in their on-line marketplace due to order-processing problems since the prior Christmas holiday and advised the UC that he had resumed operating the Adamflowers marketplace because he did not like the marketplace operating on the TOR network.

250. On April 29, 2010, using coded language in an e-mail communication, defendant WILLEMS told defendant RAWLS that he would start supplying defendant RAWLS with controlled substances.

251. On April 29, 2010, using coded language in an e-mail communication, defendant JONATHAN COLBECK agreed with defendant WILLEMS that customers paying cash would send payments to B.C. at a post office box in Center Point, Iowa.

252. On April 29, 2010, using coded language in an e-mail communication, defendant WILLEMS told defendant BIGRAS that he had received his order for one and one-half ounces of marijuana to be shipped to an address on Glencove Avenue Northwest in Palm Bay, Florida.

253. On April 30, 2010, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator in Panama that she should have received a total of

$1,510 via Western Union from individuals in New Jersey, Connecticut, Missouri, Texas, Louisiana, Nevada, and Finland; and defendant WILLEMS asked the unindicted coconspirator to load the funds onto a pre-paid debit card, bearing account number ####-####-####-3101, in the name R.G.P.

254. On May 4, 2010, using coded language in an e-mail communication, defendant WILLEMS told defendant JONATHAN COLBECK to expect $6,000 to $7,000 in additional cash that week and asked him to send the cash he had to the cash drop in the Netherlands.

255. On May 5, 2010, using coded language in an e-mail communication, defendant WILLEMS told defendant RAWLS that most of the LSD he would receive would bear the dolphin yingyang pattern, that he had already sent defendant RAWLS two packages containing 500 LSD hits each, and that he hoped to send him another 3,000 LSD hits early the following week.

256. On May 7, 2010, using coded language in an e-mail communication, defendant JONATHAN COLBECK told defendant WILLEMS that he was sending a payment to his address in Lelystad, Netherlands.

257. On May 7, 2010, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator in Panama that she should have received a total of $1,997 via Western Union from individuals in California, Colorado, Texas, South Carolina, Illinois, New York, Pakistan, Romania, and Belgium; and defendant WILLEMS asked the indicted conspirator to load the funds onto a pre-paid debit card, bearing account number ####-####-####-3101, in the name R.G.P.

258. On May 10, 2010, using coded language in an e-mail communication, defendant RAWLS told defendant WILLEMS that he had received 500 hits of LSD contained in one envelope.

259. On May 10, 2010, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator that the address to send cash payment for the unindicted co-conspirator's order was in Center Point, Iowa.

260. On May 11, 2010, using coded language in an e-mail communication, defendant WILLEMS told defendant BIGRAS that he had received defendant BIGRAS' order for one and one-half ounces of marijuana to be shipped to an address on Glencove Avenue Northwest in Palm Bay, Florida.

261. On May 11, 2010, using coded language in an e-mail communication, defendant BRIAN COLBECK asked defendant JONATHAN COLBECK whether half ounces of marijuana sold for $110 and whether he owed defendant JONATHAN COLBECK another $110 for two orders.

262. On May 13, 2010, using coded language in an e-mail communication, defendant WILLEMS told an unindicted co-conspirator in Panama that she should have received a total of $4,227 via Western Union from individuals in Louisiana, Texas, Wisconsin, Massachusetts, Pennsylvania, New Jersey, Oklahoma, Mexico, Sweden, Ireland, the United Kingdom, and the Philippines; and defendant WILLEMS asked the unindicted coconspirator to load the funds onto a pre-paid debit card, bearing account number ####-####-####-3101, in the name R.G.P.

263. On May 19, 2010, using coded language in an e-mail communication, an unindicted co-conspirator in Panama told

1  defendant WILLEMS that, starting June 1, 2010, the individual to

2  whom customer payments via Western Union should be sent was

3  Z.M.K. in Budapest, Hungary.

4       264. On May 22, 2010, using coded language in an e-mail

5  communication, defendant WILLEMS told defendant RAWLS that he

6  should have received a box containing 1,000 hits of LSD on white

7  paper and that another 1,000 hits of LSD bearing the dolphin

8  yingyang pattern were en route.

9       265. On May 23, 2010, using coded language in an e-mail

10 communication, defendant EVRON ordered one-eighth of an ounce of

11 hashish from the on-line controlled substances marketplace to be

12 shipped to Buenos Aires, Argentina.

13      266. On May 28, 2010, using coded language in an e-mail

14 communication, defendant EVRON informed defendant WILLEMS of the

15 amount of money defendants WILLEMS and JONATHAN COLBECK had

16 earned that week and advised defendant WILLEMS that he now owed

17 defendant EVRON 6,577 euros and that defendant JONATHAN COLBECK

18 owed him $521.

19      267. On May 31, 2010, using coded language in an e-mail

20 communication, defendant WILLEMS asked defendant RAWLS to mail 20

21 hits of LSD to a customer in Lubbock, Texas, and informed

22 defendant RAWLS that he should receive 2,000 hits of LSD on white

23 paper in a day or two.

24      268. On July 1, 2010, an unindicted co-conspirator received

25 an order from the UC for 50 hits of LSD, and defendant RAWLS

26 received an order from the UC for 30 hits of dimethyltriptamine

27 and 500 grams of mescaline for delivery to Los Angeles,

28 California, all via The Farmer's Market, for $1,565, which was

1  sent by mail to defendant JONATHAN COLBECK in Center Pointe,
2  Iowa.

3      269. On August 23, 2010, using coded language in an e-mail
4  communication, defendant WILLEMS advised the UC that they were
5  offering discounted LSD for the next 10 days and that future LSD
6  sales would be handled by re-sellers listed on the TOR network.

7      270. On August 25, 2010, in Alpharetta, Georgia, defendant
8  RAWLS received a package which contained approximately 250 hits
9  of LSD from the Netherlands at his post office box.

10      271. On September 8, 2010, using coded language in a private
11  message communication, defendant EVRON directed the UC to check
12  directly with an unindicted co-conspirator LSD supplier
13  concerning the status of his July 1, 2010 order for 50 hits of
14  LSD because defendant EVRON was no longer involved in order
15  processing.

16      272. On September 12, 2010, using coded language in an
17  on-line communication, an unidentified co-conspirator posted a
18  message to a forum on The Farmer's Market stating that defendants
19  BIGRAS and MATZEK were the designated payees for purchasing
20  controlled substances via PayPal.

21      273. On October 7, 2010, using coded language in an on-line
22  communication, defendant MATZEK posted a message to a forum on
23  The Farmer's Market stating that he was a designated payee for
24  purchasing controlled substances via PayPal.

25      274. On December 5, 2010, using coded language in an on-line
26  communication, defendant RAWLS posted a message on The Farmer's
27  Market stating that he had LSD available for sale.

28

275. On February 8, 2011, using coded language in an on-line communication, defendant MATZEK posted a message to a forum on The Farmer's Market stating that defendants BIGRAS and MATZEK were designated payees for purchasing controlled substances via PayPal.

276. On July 19, 2011, via The Farmer's Market, defendant RAWLS agreed to sell the UC three vials of liquid LSD for delivery to Los Angeles, California, for $2,160 sent via Paypal to defendant BRIAN COLBECK.

277. On July 19, 2011, using coded language in an e-mail communication, defendant BRIAN COLBECK asked the UC to respond to an e-mail that he had sent the UC in order to disguise from PayPal the fact that the UC was sending a payment.

278. On July 27, 2011, using coded language in an e-mail communication, defendant RAWLS provided the UC with a tracking number for his July 19, 2011 order of three vials of liquid LSD and instructed the UC not to use the TOR network when checking the tracking number.

279. On August 17, 2011, via The Farmer's Market, defendant RAWLS agreed to sell the UC three vials of liquid LSD and five grams of ketamine for delivery to Los Angeles, California, for $2,345 sent in cash via the mail to defendant JONATHAN COLBECK in Vinton, Iowa.

280. On August 23, 2011, at his residence on Virden Drive in Urbana, Iowa, defendant JONATHAN COLBECK possessed the envelope mailed by the UC on August 17, 2011, which had contained the money for the UC's purchase of LSD and ketamine.

281. On August 24, 2011, using coded language in an e-mail communication, defendant RAWLS provided the UC with a tracking number for his August 17, 2011 order of three vials of liquid LSD.

282. On August 30, 2011, in Alpharetta, Georgia, defendant RAWLS received a package that contained approximately 1,500 hits of LSD and 14 grams of LSD microdots from the Netherlands at his post office box.

283. On October 21, 2011, using a posting on The Farmer's Market, defendant JONATHAN COLBECK offered to sell large quantities of LSD in sheets of 100 hits per sheet at a minimum of 100-hit quantities.

284. On October 21, 2011, using a posting on The Farmer's Market, defendant RAWLS offered to sell ketamine, DMT, liquid LSD, and psilocybin mushrooms.

COUNT TWO

[18 U.S.C. § 1956(h)]

1.   Paragraphs One through Eight of the General Allegations are realleged and incorporated by reference as if fully set forth herein.

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing to on or about November 29, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants WILLEMS, EVRON, JONATHAN COLBECK, RAWLS, DUGAN, BRIAN COLBECK, BIGRAS, and MATZEK (collectively, "the defendants"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally transport, transmit, and transfer monetary instruments and funds, that is, United States currency and euros, from places in the United States to and through places outside the United States, and to places in the United States from and through places outside the United States:

1.   with the intent to promote the carrying on of specified unlawful activity, that is, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, all in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

2.   knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the

60

1   proceeds of specified unlawful activity, that is, conspiracy to

2   distribute controlled substances, in violation of Title 21,

3   United States Code, Section 846, all in violation of Title 18,

4   United States Code, Section 1956(a)(2)(B)(i).

5   B.   <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE</u>

6        <u>ACCOMPLISHED</u>

7        The objects of the conspiracy were to be accomplished in

8   substance as follows:

9        1-25.  The Grand Jury re-alleges and incorporates by

10  reference as if fully set forth herein paragraphs 1 through 25 of

11  Section B of Count One setting forth the means of the conspiracy

12  charged in Count One.

13  C.   <u>OVERT ACTS</u>

14       In furtherance of the conspiracy, and to accomplish the

15  objects of the conspiracy, the defendants, and others known and

16  unknown to the Grand Jury, committed various overt acts within

17  the Central District of California, and elsewhere, including but

18  not limited to the following:

19       1-284. The Grand Jury re-alleges and incorporates by

20  reference as if fully set forth herein paragraphs 1 through 284

21  of Section C of Count One, setting forth the overt acts of the

22  conspiracy charged in Count One.

23

24

25

26

27

28

COUNTS THREE through ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(v), (b)(1)(B)(v), (b)(1)(C);

18 U.S.C. § 2]

On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants MARC PETER WILLEMS, also known as ("aka") "Adam," aka "Ruby" ("WILLEMS"), MICHAEL EVRON, aka "Keysh" ("EVRON"), JONATHAN COLBECK, aka "Jay," aka "djsfishin" ("JONATHAN COLBECK"), RYAN RAWLS, aka "jootgatter" ("RAWLS"), and BRIAN COLBECK, aka "brnytrbl" ("BRIAN COLBECK") as set forth below, knowingly and intentionally distributed, and aided, abetted, counseled, commanded, induced, and procured the distribution of, the following quantities of a mixture and substance containing a detectable amount of lysergic acid diethylamide ("LSD"), a Schedule I controlled substance.

| COUNT | DATE | DEFENDANTS | AMOUNT |
|---|---|---|---|
| THREE | 3/27/2009 | WILLEMS and EVRON | .4 grams |
| FOUR | 4/21/2009 | WILLEMS and EVRON | at least one gram, that is, approximately 1.5 grams |
| FIVE | 7/6/2009 | WILLEMS and EVRON | at least one gram, that is, approximately 1.9 grams |
| SIX | 12/8/2009 | WILLEMS and EVRON | at least one gram, that is, approximately 5.53 grams |
| SEVEN | 12/15/2009 | WILLEMS and EVRON | at least one gram, that is, approximately 2.11 grams |

| EIGHT | 5/7/2010 | WILLEMS and EVRON | at least one gram, that is, approximately 1.2 grams |
| NINE | 10/14/2010 | WILLEMS and EVRON | .58 grams |
| TEN | 7/27/2011 | WILLEMS, EVRON, RAWLS, and BRIAN COLBECK | at least 10 grams, that is, approximately 31.8 grams |
| ELEVEN | 8/29/2011 | WILLEMS, EVRON, RAWLS, and JONATHAN COLBECK | at least 10 grams, that is, approximately 31.7 grams |

COUNT TWELVE

[18 U.S.C. § 848(a)]

Beginning on an unknown date, and continuing to on or about November 29, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants MARC PETER WILLEMS, also known as ("aka") "Adam," aka "Ruby" ("WILLEMS"), and MICHAEL EVRON, aka "Keysh" ("EVRON"), engaged in a continuing criminal enterprise in that defendants WILLEMS and EVRON knowingly and intentionally violated Title 21, United States Code, Sections 841(a)(1) and 846, including but not limited to the felony violations alleged in Counts One and Three through Eleven, which Counts are re-alleged and incorporated herein by reference as if fully set forth in this Count, all of which violations were part of a continuing series of felony violations of subchapters I and II of Title 21 of the United States Code undertaken by defendants WILLEMS and EVRON in concert with at least five other persons with respect to whom defendants WILLEMS and EVRON occupied a position of organizer, supervisor, and manager, and from which continuing series of violations defendants WILLEMS and EVRON obtained substantial income and resources.

FORFEITURE ALLEGATION

[21 U.S.C. § 853(a)]

1.    The allegations contained in Counts One through Twelve of this Indictment are hereby repeated, realleged, and incorporated by reference herein as if fully set forth at length for the purpose of alleging criminal forfeiture pursuant to the provisions of Title 21, United States Code, Section 853. Pursuant to Federal Rule of Criminal Procedure 32.2 and Title 21, United States Code, Section 853, each defendant, if convicted of one or more of the offenses charged in Counts One through Twelve of this Indictment, shall forfeit to the United States of America the following property:

       a.    All right, title, and interest in  --

            i.    any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any of the offenses described in Counts One through Twelve; and

           ii.    any property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, any of the offenses described in Counts One through Twelve;

       b.    A sum of money equal to the total value of the property described in paragraph 1(a).

2.    Pursuant to Title 21, United States Code, Section 853(p), each defendant shall forfeit substitute property, up to the value of the total amount described in paragraph 1(a), if, as

1   the result of any act or omission of said defendant, said

2   property, or any portion thereof, cannot be located upon the

3   exercise of due diligence; has been transferred, sold to, or

4   deposited with a third party; has been placed beyond the

5   jurisdiction of the court; has been substantially diminished in

6   value; or has been commingled with other property that cannot be

7   divided without difficulty.

8                                       A TRUE BILL

9                                       /S/

10                                      Foreperson

11

12  ANDRÉ BIROTTE JR.
    United States Attorney

13

14

15  ROBERT E. DUGDALE
    Assistant United States Attorney
16  Chief, Criminal Division

17  RODRIGO A. CASTRO-SILVA
    Assistant United States Attorney
18  Chief, Organized Crime
     Drug Enforcement Task Force Section

19

20  KEVIN S. ROSENBERG
    Assistant United States Attorney
    Deputy Chief, Organized Crime
21   Drug Enforcement Task Force Section

22  RASHA GERGES
    Assistant United States Attorney
23   Drug Enforcement Task Force Section

24

25

26

27

28